WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOHN COX, as personal representative for the )
ESTATE OF GENGHIS MUSKOX, )
                                                Plaintiff, )
        vs. )
UNITED STATES OF AMERICA, )
                                             Defendant. )     No. 3:16-cv-0226-HRH

O R D E R

Motion to Strike;
Motion for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed.[2] In support of his opposition, plaintiff offers an expert affidavit.[3] Defendant moves to strike plaintiff's expert affidavit.[4] The motion to strike is opposed.[5] Oral argument was requested on the motion for summary judgment and has been heard.

---

[1]Docket No. 37.

[2]SEALED Docket No. 44.

[3]SEALED Docket No. 45.

[4]Docket No. 52.

[5]Docket No. 58.

Facts

Plaintiff is John Cox, as the personal representative for the Estate of Genghis Muskox. Defendant is the United States of America.

Paul Vermillion served in the United States Army from January 4, 2005 through August 22, 2007.[6] During part of that time, Vermillion was deployed to Iraq.[7]

After his discharge, Vermilion "received care at VA facilities in Honolulu, Hawaii; Anchorage, Alaska; Dallas, Texas; San Antonio, Texas; and Long Beach, California[.]"[8] It is undisputed that Vermillion was diagnosed with PTSD and treated by various VA medical providers for his PTSD.

On December 5, 2013, Vermillion killed Genghis Muskox. Vermillion was charged with first degree murder the next day.[9] On August 4, 2016, Vermillion entered into a plea agreement with the State of Alaska and pled guilty to manslaughter. At the sentencing hearing, the State explained that it accepted the plea because there was a risk of an acquittal either based on an accident theory or a self-defense theory.[10]

---

[6]Certificate of Release or Discharge from Active Duty at 1, Exhibit A, Motion for Summary Judgment, Docket No. 37.

[7]Id.

[8]Declaration of Greg R. Strandberg at 1, ¶ 3, Exhibit B, Motion for Summary Judgment, Docket No. 37.

[9]Complaint, Exhibit G at 1, Motion for Summary Judgment, Docket No. 37.

[10]Transcript of Sentencing Hearing at 14:5-25, Exhibit H, Motion for Summary
(continued...)

On November 23, 2015, plaintiff filed a complaint in State Superior Court against Vermillion and his father, alleging, among other things, that "Vermillion negligently and/or recklessly and/or intentionally struck and/or shot Genghis Muskox in Cooper Landing, Alaska, thereby causing serious injury and the death of Genghis Muskox for which the defendants are liable."[11] That case settled and was dismissed pursuant to the parties' stipulation on April 20, 2017.[12]

On September 26, 2016, plaintiff commenced this action in which plaintiff asserts a negligence claim under the Federal Tort Claims Act (FTCA). Plaintiff alleges that defendant "provided inadequate medical care to Paul Vermillion, including but not limited to, mental health and/or drug and/or alcohol screening and/or treatment, which was below the standard of care."[13] Plaintiff alleges that "defendant's negligent and/or grossly negligent and/or reckless medical care of Paul Vermillion was a substantial factor in causing the death of Genghis Muskox. . . ."[14]

---

[10](...continued)
Judgment, Docket No. 37.

[11]Complaint at 5, ¶ 29, Exhibit I, Motion for Summary Judgment, Docket No. 37.

[12]Exhibit J, Motion for Summary Judgment, Docket No. 37.

[13]Amended Complaint at 2, ¶ 10, Docket No. 5.

[14]Id. at 2-3, ¶ 11.

On February 3, 2017, defendant filed a third-party complaint against Paul Vermillion for allocation of fault.[15] Defendant alleged that if the court were to find defendant liable to plaintiff, the majority of fault should be allocated to Vermillion.[16] Defendant's third-party complaint was dismissed on April 10, 2017 because "[f]ault can be allocated in this action to the third-party defendant, without his continued presence in the litigation."[17]

Defendant now moves for summary judgment on plaintiff's FTCA claim.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual

---

[15] Docket No. 9.

[16] Id. at 4-5, ¶ 14.

[17] Order re Dismissal of Third-Party Complaint at 1, Docket No. 16.

facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

Defendant first argues that it is entitled to summary judgment because the court lacks subject matter jurisdiction. "The FTCA 'waives the sovereign immunity of the United States for actions in tort' and 'vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees.'" Valadez-Lopez v. Chertoff, 656 F.3d 851, 855 (9th Cir. 2011) (quoting Jerves v. United States, 966 F.2d 517, 518 (9th Cir. 1992)). "This waiver allows the government to be sued 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Morales v. United States, 895 F.3d 708, 713 (9th Cir. 2018) (quoting 28 U.S.C. § 1346(b)(1)). "'[I]n order to state a claim within the FTCA's waiver of sovereign immunity, [a plaintiff] must allege negligence (1) by 'officers or employees of a[] federal agency[.]'" Valadez-Lopez, 656 F.3d at 858 (quoting 28 U.S.C. § 2671)). "Essential to establishing jurisdiction is knowing who provided the care in order to determine if those providers were in fact 'employees' of the Government." Morris v. United States, Case No. CIV 06–2058–PHX–SMM, 2007 WL 1076695, at *3 (D. Ariz. April 6, 2007).

Defendant argues that the court lacks subject matter jurisdiction because plaintiff has not identified any specific provider who provided negligent care to Vermillion. Rather,

plaintiff has generally alleged that "defendant provided inadequate medical care to Paul Vermillion[.]"[18] Moreover, defendant argues that plaintiff's expert, Dr. Goldstein, did not identify any specific provider who allegedly provided inadequate medical care. At his deposition, Dr. Goldstein was asked "are you saying generally the VA failed, or can you point to a specific provider that" failed to provide adequate medical care to Vermillion.[19] Dr. Goldstein answered, "[n]o specific provider but that the VA providers, and there were a number of them, over a long period of time at some point [threw] in the towel and did not take measures to ensure [Vermillion] was receiving effective treatment for his PTSD. . . ."[20] Dr. Goldstein testified that he assumed all of Vermillion's providers were VA employees.[21] Dr. Goldstein testified that "I can't pinpoint a specific doctor. It's the whole group of his providers over the years [who] failed to come up with an effective treatment plan which included . . . first line agents that would be likely to control and benefit [Vermillion's] PTSD symptoms."[22] Dr. Goldstein agreed that he was "saying generally as a whole the [VA] failed Mr. Vermillion in treating him[,]" that "[n]obody stepped forward to coordinate and

---

[18]Amended Complaint at 2, ¶ 10, Docket No. 5.

[19]Deposition of Robert L. Goldstein, Vol. I at 67:12-15, Exhibit O, Motion for Summary Judgment, Docket No. 37.

[20]Id. at 67:16-21.

[21]Id. at 69:6-8.

[22]Id. at 85:12-18.

implement a treatment plan that was likely to be effective."[23]  Dr. Goldstein was asked whether he was "going to surprise [defense counsel] at trial by coming up with" "a specific instance where a specific doctor provided inadequate care," and Dr. Goldstein replied: "Well, [Vermillion] had multiple providers over the course of many years.  So I can't single out any one provider, and there won't be any last minute surprises in that regard."[24]

Defendant argues that because plaintiff has not identified a specific provider or a specific act of negligence, there is no way to determine whether plaintiff's FTCA claim is against a government employee.  Defendant argues that it is quite possible that some of the VA providers were independent contractors, against whom FTCA claims cannot be asserted. See Edison v. United States, 822 F.3d 510, 517 (9th Cir. 2016) (quoting 28 U.S.C. § 2671) ("[t]he FTCA's limited waiver of sovereign immunity explicitly excludes 'any contractor with the United States' from its definition of '[e]mployee of the government'").

Plaintiff has identified specific individuals who failed to provide adequate care to Vermillion.  Dr. Goldstein determined that <u>all</u> of the medical providers at the VA who treated Vermillion after 2009 failed to provide adequate care for Vermillion's PTSD.  Plaintiff identified these individuals in his response to defendant's interrogatory that asked, in part, for plaintiff to "[s]tate and describe in full and complete detail each act and/or omission on the part of the United States, its employees, agents and/or servants which you contend

---

[23]Id. at 154:8-14.

[24]Goldstein Deposition, Vol. II at 185:9-17, Exhibit P, Motion for Summary Judgment, Docket No. 37.

constituted negligence as referred to in the Complaint[.]"[25] Plaintiff is alleging that Vermillion's course of treatment was inadequate. This list sufficiently identifies the medical providers who were involved in Vermillion's course of treatment at the VA, and defendant has not offered any evidence that these providers were not VA employees. The court thus concludes that it has subject matter jurisdiction.[26]

But even if the court has subject matter jurisdiction, which it does, defendant argues that it is still entitled to summary judgment on plaintiff's FTCA claim because the VA did not owe a duty of care to Genghis Muskox. The parties have assumed that Alaska law would apply to plaintiff's FTCA claim. Under Alaska law, "[i]n order to prove [a] negligence claim[], [a plaintiff] must show that: (1) the defendants owed him a duty of care, (2) the defendants breached this duty, (3) he was injured, and (4) his injury was the factual and proximate result of the defendants' breach." Regner v. North Star Volunteer Fire Dep't, Inc., 323 P.3d 16, 21 (Alaska 2014).

Defendant argues that plaintiff's claim fails on the first element. "Before a defendant can be held liable for negligence, it must owe a duty of care to the plaintiff." Bolieu v. Sisters of Providence in Wash., 953 P.2d 1233, 1235 (Alaska 1998). Defendant argues that under Alaska law, "the source of a physician's duty to provide reasonably competent care lies

---

[25]Plaintiff's Responses to Defendant's Interrogatories at 1-3, Exhibit 1, SEALED Opposition to Motion for Summary Judgment, Docket No. 44.

[26]Because the court did not consider Dr. Goldstein's affidavit in order to determine that it had subject matter jurisdiction, defendant's motion to strike his affidavit is denied as moot.

in the unique nature of the physician-patient relationship." M.A. v. United States, 951 P.2d 851, 856 (Alaska 1998). In other words, defendant argues that a physician only owes a duty to his patient. Because there was no physician-patient relationship between the VA and Muskox, defendant argues that it cannot be liable for the VA's alleged negligence in treating Vermillion.

But, as the Alaska Supreme Court has noted, "it is the majority rule that treating physicians should use reasonable care to protect third persons, in addition to their patients." Bolieu, 953 P.2d at 1237 n.7. The fact that there was no physician-patient relationship between the VA and Muskox does not necessarily mean that the VA providers did not owe a duty to Muskox.

"'[T]he precise nature and extent of a duty is a question of law which can be decided at the summary judgment stage.'" Dore v. City of Fairbanks, 31 P.3d 788, 792 (Alaska 2001) (quoting Smith v. State, 921 P.2d 632, 634 (Alaska 1996)). "As a question of law, it is a question for the court and not the jury to answer. 'Although the precise nature and extent of that duty is a question of law,' however, 'it depends on the nature and extent of the act undertaken, a question of fact.'" Smith, 921 P.2d at 634 (quoting Estate of Breitenfeld v. Air–Tek, Inc., 755 P.2d 1099, 1102 (Alaska 1988)).

"To determine whether actionable duty exists," the Alaska Supreme Court "first determine[s] the class of cases to which the duty would apply." Dore, 31 P.3d at 793. The Alaska Supreme Court looks to "the Restatement (Second) of Torts to assist [in its]

determination of whether a defendant has a duty to protect a victim from third party harm." Id. Plaintiff is alleging that the VA providers had a duty to protect Muskox from harm, even though they were not treating Muskox, and that they failed to do so because they failed to provide adequate medical care to Vermillion. Thus, this case falls within the class of cases to which the Alaska Supreme Court would look to the Restatement (Second) of Torts in order to determine whether a duty exists.

"Under the Restatement, the general tort duty rule is that a person has no duty to protect a victim from even foreseeable harm caused by a third person." Dore, 31 P.3d at 793. There is an exception to this general rule if a special relationship exists between the defendant and a third person. Id. Such a relationship "can exist between a third person having dangerous propensities and a defendant who takes charge of him (§ 319)[.]" Id.

> Restatement § 319 imposes a duty on those in charge of a person having dangerous propensities in certain situations:
>
> > "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

Id. at 794 (quoting Restatement (Second) of Torts § 319 (1965)).

Here, there may be genuine issues of material fact as to whether Vermillion had dangerous propensities, but there are no questions of fact as to whether the VA providers ever "took charge" of Vermillion. They did not. Rather, Vermillion was treated as an outpatient who was free to come and go as he pleased, except for one short voluntary

commitment in 2012. As the court found in Nasser v. Parker, 455 S.E.2d 502, 506 (Va. 1995), a doctor does not take "charge of" a patient within the meaning of Restatement § 319 by "accepting [him] as his patient for the purpose of providing prolonged treatment . . . , prescribing medication . . . , and arranging for [his] admittance to [the] Hospital." See also, Tamsen v. Weber, 802 P.2d 1063, 1067 (Ariz. Ct. App. 1990) ("[t]he scope of the duty imposed" in a case in which a patient has "freedom of movement" "necessarily differs from that which applies to a psychiatrist whose patient has been involuntarily committed" because "a psychiatrist cannot monitor and control an outpatient's interaction with the public").

Nothing in Division of Corrections, Department of Health & Social Services v. Neakok, 721 P.2d 1121 (Alaska 1986), overruled in part by, State, Dep't of Corrections v. Cowles, 151 P.3d 353 (Alaska 2006), a case cited by plaintiff, is to the contrary. There, "the question [was] whether the State can be held liable for negligent parole supervision." Cowles, 151 P.3d at 358. "[T]he relatives of three people murdered by a mandatory parolee sued DOC for negligence, alleging, among other things, that DOC failed to impose appropriate parole conditions and to supervise the parolee adequately." Id. The Alaska Supreme Court "held . . . that the State owes a duty of care to a parolee's foreseeable victims. . . ." Id. But, there is an important difference between Neakok and this case. In Neakok, the Alaska Supreme Court found that "[t]he state . . . stands in a special relationship with a parolee, both because of its increased ability to foresee the dangers the parolee poses and because of its substantial ability to control the parolee." Neakok, 721 P.2d at 1126.

Here, as discussed above, there was no special relationship between the VA providers and Vermillion because the VA providers did not control Vermillion.

Based on the framework provided by Section 319 of the <u>Restatement</u>, the court concludes that, as a matter of law, the VA providers did not owe a duty to Muskox because the VA providers never took charge of Vermillion.[27] Because the VA providers owed no duty to Muskox, plaintiff cannot prevail on his FTCA negligence. Defendants thus are entitled to summary judgment.

<u>Conclusion</u>

Defendant's motion to strike is denied as moot.

Defendant's motion for summary judgment is granted. The clerk of court shall enter judgment dismissing plaintiff's amended complaint with prejudice.

DATED at Anchorage, Alaska, this 3rd day of May, 2019.

/s/ H. Russel Holland<br>
United States District Judge

---

[27]"Because this case falls within the class of cases using the Restatement framework to determine if a defendant has tort duty to protect a victim from third party harm, [the court does] not need to proceed with the weighing of the D.S.W." factors. <u>Dore</u>, 31 P.3d at 796.